SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ICON OCTAVIAN CENTER, LLC,<br><br>      Plaintiff,<br><br>    -against-<br><br>CENTER NAVIGATION, LTD. and GEDEN HOLDINGS, LTD.,<br><br>      Defendants. | Index No.: 655154/2016<br><br>**VERIFIED AMENDED COMPLAINT** |

Plaintiff, ICON Octavian Center, LLC, by Johnston Law Firm, LLC, alleges the following against Defendants Center Navigation, Ltd. and Geden Holdings, Ltd. (collectively "Defendants").

**PRELIMINARY STATEMENT**

This action arises out of Defendants' breach of contractual and common law duties owed to ICON Octavian Center, LLC (hereinafter "IOC"). Defendants respectively entered into two agreements with IOC on June 14, 2011. Defendants failed to meet their common law and payment obligations under the terms of the two agreements resulting in financial harm to IOC, and committed fraud in the inducement.

**THE PARTIES**

1. Plaintiff IOC is a limited liability company formed pursuant to the laws of the Republic of the Marshall Islands. Its principal place of business is in the State of New York.

2. Defendant Center Navigation, Ltd. is a limited liability company formed pursuant to the laws of the Republic of Malta. Its principal place of business is in Istanbul, Turkey.

3. Defendant Geden Holdings, Ltd. ("Geden") is a limited liability company formed pursuant to the laws of the Republic of Malta. Its principal place of business is in Istanbul, Turkey. Geden is the parent company of Center Navigation, Ltd.

4. The parties agreed that disputes arising out of the two agreements would be governed by New York law and venue can be laid in any New York State Court or Federal court of the United States of America sitting in New York County.

## GENERAL ALLEGATIONS

5. IOC is in the business of purchasing seagoing cargo vessels and chartering those vessels to third-parties, pursuant to certain terms and conditions.

6. Center Navigation, Ltd. is a charterer in the business of hiring vessels.

7. Geden is the parent company of Center Navigation, Ltd. and is an international shipping conglomerate which is winding down its operations.

8. Advantage Tankers, Inc. ("Advantage") is a company that is wholly owned by the Mehmet Karamehmet family ("Karamehmet Family"), the same family that owns Geden. It is organized under the laws of the Marshall Islands. Effective 2015, Advantage is an international shipping conglomerate which, as successor to Geden, services Geden's customers.

9. Genel Denizcilik ("Genel") is a company that manages Geden's and Advantage Tankers' operations. It is also wholly owned by the Karamehmat Family.

10. In addition to common ownership, Geden, Advantage and Genel have common officers, personnel and principal place of business, at Buyukdere Cad. Yapi Kredi Plaza, Kap 12 34330 Levent, Istanbul, Turkey.

11.	On June 14, 2011, IOC and Center Navigation, Ltd. (hereinafter "Center") entered into a "Barecon 2001" Standard Bareboat Charter ("Bareboat Charter"). (A true and correct copy of the Bareboat Charter is annexed hereto as **Ex. A.**)

12.	The Bareboat Charter provided for IOC, as the Owner, to charter a certain crude oil vessel to Center for a period of 60 months.

13.	Pursuant to the Bareboat Charter, the rate for hire during this term was Twenty Thousand Dollars ($20,000.00) per day.

14.	The Bareboat Charter also provided Center with the option to purchase the vessel on each anniversary of the delivery date in accordance with the calculation of the purchase price set forth therein.

15.	It also provided IOC with a Put Option to cause Center to purchase the vessel on the fifth anniversary of the delivery date for the amount of Sixty-Four Million Five Hundred Thousand Dollars ($64,500,000.00).

16.	Concurrent with the signing of the Bareboat Charter, Geden entered into a Charter Guarantee ("Guarantee") with IOC, wherein Geden guaranteed to IOC all amounts payable to IOC under the terms of the Bareboat Charter. (A true and correct copy of the Guarantee is annexed hereto as **Ex. B.**)

17.	In the Guarantee, Geden represented that its assets had "substantial value" and that it would guarantee performance under the Charter including the "punctual payment" to IOC of "all amounts payable at any time" under the Charter. Geden further promised that its obligations were "enforceable . . . to the full extent of its assets and property" and that it "has the capacity and has taken all action . . . to . . . comply with its obligation under this Guarantee."

3

18. To that end, Geden promised to "maintain a minimum market Adjusted Net Worth of not less than Two Hundred Fifty Million Dollars ($250,000,000)." The "Adjusted Net Worth" was "in respect of the Fleet Vessels" owned by Geden.

19. In order to induce IOC to accept Geden's guarantee, Geden furnished it with information about all its vessels in an attempt to demonstrate that it had sufficient assets to meet its guarantee obligations and promised that sufficient assets would be maintained during the term of the Bareboat Charter and the Guarantee.

20. IOC justifiably relied upon Geden's representations in accepting the Guarantee and would not have entered into the subject agreements but for such representations.

21. Unbeknownst to IOC, at the time of the Guarantee, Geden had structured its operations to shield from IOC each of its other vessels from liability against Geden's claims by using special purpose entities (SPE) which were formed and wholly owned by Geden.

22. Geden's conduct in this regard contradicted its representations in the Guarantee. This scheme was discovered by IOC upon its counsel taking the deposition of Geden's Chief Financial Officer, Mehmet Mat, on June 22, 2017. Mr. Mat testified that each vessel was organized as an SPE. Geden then refused to produce records about the SPE's under the pretext that they are separate legal entities from Geden for purposes of the Guarantee, notwithstanding Geden's promise that all of its Fleet Vessels were part of its total assets to secure and support the Guarantee.

23. At the time Geden made its representations in the Guarantee, it knew the representations to be false. It in fact intended to deny IOC recourse against the Fleet Vessels in the event of a payment default by hiding behind SPE's and an alter ego corporate form.

24. Geden is ultimately owned by the Mehmet Karamehmet family. It owns Cukorova Holdings, which wholly owns Buselten Finance SA, which wholly owns Geden. The Karamehmet Family also wholly owns Genel through Cukorova Holdings.

25. Genel managed Geden's fleet day-to-day. It operated out of the same office location as Geden. Genel and Geden share the same officers. Tugrul Tokgoz is Chief Executive Officer ("CEO") to both companies. Mr. Mat is Chief Executive Officer ("CFO") to both companies. Geden does not engage in operations beyond being managed by Genel. It has no employees.

26. In 2015, Geden fraudulently implemented a scheme to transfer 11 of the Fleet Vessels to an alter ego successor entity, Advantage Tankers, to shield the vessels from IOC's claims. The scheme was disclosed during Mr. Mehmet's June 22, 2017 deposition.

27. Advantage is a company organized under the laws of the Marshall Islands.

28. The Karamehmet Family owns Advantage. The ultimate controlling owner of record is Mr. Karamehmet's daughter, Nazli Williams, who has no substantive maritime experience. Mr. Tokgoz is minority owner. Mr. Mat also serves as CFO to Advantage, and, as with Geden and Genel, Mr. Tokgoz serves as CEO to Advantage.

29. In 2015, to thwart IOC's recourse to the full value of assets intended to secure and support Geden's Guarantee, Geden transferred 11 vessels it owned to Advantage, which, like Geden, organized SPE's for each vessel under different names and flags. Such vessels had been part of the Fleet Vessels identified in the Guarantee which supported and secured Geden's Guarantee.

30. Advantage holds the transferred vessels in the same manner as Geden, managed by Genel with the same personnel, location and phone number. Advantage is serving the same customers as Geden.

31. Geden transferred vessels to Advantage for inadequate consideration. Notwithstanding a sale of such a large portion of its assets, the transaction still left Geden with net liabilities valued by Mr. Mat of Two Hundred Million Dollars ($200,000,000.00). To date, Geden has refused to produce records about the transfers. Per publicly available verified pleadings in the matter *Psara Energy, LTD. V. Space Shipping, LTD* et al., (Civil Action No. 2:16-cv-01305-SM-MBN) (E.D. La.), the transfer occurred "without as much as a formal meeting of shareholders or written resolution authorizing the virtual liquidation of [Geden]." Instead, Williams "verbally ordered Tukgrul to sell the 11 vessels."

32. Notwithstanding Geden's promise to maintain its Fleet Vessels to meet its "minimum market Adjusted Net Worth" obligations, Geden to date has refused to provide records relating to the transfer of those vessels under the guise of the vessels having been owned by Geden's SPE's, not Geden. Geden's refusal flatly contradicts the Guarantee, and evidences the original fraudulent intent by Geden at the time of the Guarantee.

33. Geden and Advantage are alter egos of each other within the working group controlled, dominated by and secretly coordinated within, the Karamehmet Family.

**DEFENDANTS' DEFAULT AND FAILURE TO PERFORM**

34. Center performed under the terms of the Bareboat Charter for a period of time. Ultimately it stopped making the monthly payments and defaulted per the terms of the Bareboat Charter.

35. On May 26, 2016 IOC sent a letter of default to Center outlining the termination events that had occurred. The termination events included the following:

   a. Non-payment of the Hire due. Center failed to pay $2,576,000.00 of the required payments;

   b. Center and Geden failed to inform IOC of its insolvency;

   c. Center failed to comply with the Bareboat Charter's requirement to pay all earnings into a Retention Account;

   d. Center failed to meet the minimum balance requirement called for under the terms of the Bareboat Charter;

   e. Center failed to properly and timely notify IOC of a material adverse change; and

   f. Center failed to notify IOC of any of the Termination Events despite the Bareboat Charter calling for it do so.

36. On May, 26, 2016 IOC also sent a letter of default to Geden notifying it of the various termination events that had occurred with Center under the terms of the Bareboat Charter. IOC demanded payment from Geden pursuant to the Guarantee.

37. Defendants failed to remedy their default and on June 13, 2016 IOC sent a Termination Notice to the Defendants, terminating the Bareboat Charter effective June 15, 2016.

38. Defendants have still failed to make the requisite payments to IOC.

**AS AND FOR THE FIRST CAUSE OF ACTION**
(Breach of the Bareboat Charter as to Defendant Center Navigation, Ltd.)

39. IOC repeats and restates each of the above allegations as if fully set forth herein.

40. Center agreed to perform under the terms of the Bareboat Charter.

41. During the term of the Bareboat Charter, Center failed to meet its obligations required of it, including failure to pay, thereby breaching the Bareboat Charter.

42. The Bareboat Charter provides for all costs, including legal fees and expenses incurred in connection with enforcing its rights related to termination events.

43. The Bareboat Charter further provides for interest on overdue amounts on any amount due, whether by acceleration or otherwise, not paid when due, to bear interest thereafter from the due date thereof until payment at a rate equal to one month LIBOR plus 5.30%.

44. As a proximate result of Center's aforesaid conduct, IOC was damaged in an amount to be proven at trial, but not less than $19,903,076.00.

### AS AND FOR THE SECOND CAUSE OF ACTION
(Breach of the Guarantee as to Defendant Geden Holdings, Ltd.)

45. IOC repeats and restates each of the above allegations as if fully set forth herein.

46. Geden, as Guarantor, was obligated to perform under the terms of the Bareboat Charter as a primary obligor, not merely a surety.

47. Upon being notified of Center's default and failure to perform, Geden was required to make payments to IOC.

48. Geden failed to make payment to IOC, thereby breaching its duties under the Guarantee.

49. As a direct and proximate result of Geden's aforesaid conduct, IOC was damaged in an amount to be proven at trial, but no less than $19,903,076.00

### AS AND FOR THE THIRD CAUSE OF ACTION
(Fraud in the Inducement)

50. IOC repeats and restates each of the above allegations as if fully set forth herein.

51. At the time of the Guarantee, Geden promised IOC it would maintain all its Fleet Vessels and assets at an amount no less than Two Hundred Fifty Million Dollars ($250,000,000.00) to support and secure Geden's obligations in the Guarantee.

52. Geden's representations were false at the time they were made, and were made for the purpose of inducing IOC to accept the Guarantee and enter into the Bareboat Charter.

53. Contrary to these promises, Geden structured its ownership of the vessels using SPE's to shield the Fleet Vessels from recourse by IOC upon Geden's default.

54. Following demand being duly made to Geden by IOC to satisfy all its payment obligations, Geden disavowed its Guarantee obligations and continued and advanced its fraudulent scheme to shield the Fleet Vessels from IOC's legitimate claims arising out of Geden's default, leaving Geden with insufficient assets to satisfy its obligations under the Guarantee.

55. Geden's Guarantee obligations, and specifically its promises to maintain its Fleet Vessels in an amount of no less than $250,000,000.00, were made by Geden with knowledge that IOC would justifiably rely on the same, and constituted material misrepresentations intended to induce Geden to enter into the agreements, which Geden had no intention of honoring.

56. As a direct and proximate result of Geden's aforesaid conduct, IOC was damaged in an amount to be proven at trial, but no less than $19,903,076.00.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
(Breach of the Covenant of Good Faith and Fair Dealing)

57. IOC repeats and restates each of the above allegations as if fully set forth herein.

58. The implied covenant of good faith and fair dealing provides that neither party to a contract shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

59. Geden frustrated the purpose of the Guarantee, and breached the implied covenant of good faith and fair dealing inherent in the Guarantee, by shielding from IOC its true net asset

9

value and transferring the vessels to an alter ego company, thereby injuring the ability of IOC to receive the fruits of the Guarantee.

60. As a direct and proximate result of Geden's aforesaid conduct, IOC was damaged in an amount to be proven at trial, but no less than $19,903,076.00.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
(Permanent Injunction)

61. IOC repeats and restates each of the above allegations as if fully set forth herein.

62. Injunctive relief is necessary to prevent irreparable injury to IOC, including, but not limited to Geden transferring additional vessels to an alter ego company, thereby further injuring the ability of IOC to receive the fruits of the Guarantee.

63. Geden's fraudulent scheme to shield the Fleet Vessels from IOC's legitimate claims evince an intent to render itself monetarily judgment-proof in the instant matter, the result of which is that IOC has no adequate remedy at law.

64. The balance of the equities weighs decidedly in favor of IOC. If the injunctive relief is not granted, then IOC will be irreparably harmed in that it will be unable to receive the fruits of the Guarantee. If, on the other hand, injunctive relief is granted, Geden will not be harmed at all.

65. Accordingly, this Court should enter a permanent injunction against Geden to restrain it from further transferring its assets to Advantage or other third parties for the purpose of frustrating IOC's ability to recover under the Guarantee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for entry of judgment against Defendants in an amount to be proven at trial, but not less than $19,903,076.00, plus interest, costs, disbursements and reasonable attorneys' fees, an injunction against Geden to restrain it from further transferring its assets to Advantage or other third parties and such other and further relief as the Court deems just and proper.

Dated:  November 10, 2017
        New York, New York

JOHNSTON LAW FIRM LLC

By: _____
     Thomas O. Johnston

830 Third Avenue, 5th Floor
New York NY 10022
(973) 447-4610

*Attorneys for Plaintiff*
ICON Octavian Center, LLC

# VERIFICATION

STATE OF NEW YORK }

COUNTY OF NEW YORK }ss:

    MARK GATTO, being duly sworn, deposes and says:

1.    I am the Co-President and Co-Chief Executive Officer of Plaintiff, ICON Octavian Center, LLC and its manager ICON Center, LLC.

2.    In that capacity I have first-hand knowledge of the business operations of Plaintiff and am the signatory on the Bareboat Charter and Charter Guarantee.

3.    I have read the foregoing complaint, personally know the contents thereof, and the same is true to my own knowledge, except those matters stated to be alleged on information and belief, and as to those matters I believe them to be true.

*[Handwritten: STATE OF NEW YORK } ss. COUNTY OF NEW YORK ]*

_____
MARK GATTO

Sworn to and subscribed before me this
___9th___ day of November 2017

_____
Notary Public

JASON NG
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01NG6320358
Qualified in New York County
Commission Expires March 02, 2019