**IN THE HIGH COURT OF SOUTH AFRICA**
**KWAZULU-NATAL LOCAL DIVISION, DURBAN**

(Exercising its admiralty jurisdiction)

**CASE NO: A50/2018**

**NAME OF SHIP: VLCC "ADVANTAGE SKY"**

In the matter between:

| | |
|---|---|
| **ADVANTAGE SKY SHIPPING LLC** | First Applicant |
| **VLCC "ADVANTAGE SKY"** | Second Applicant |

and

| | |
|---|---|
| **ICON AMAZING, LLC** | First Respondent |
| **ICON FANTASTIC, LLC** | Second Respondent |
| **ICON OCTAVIAN CENTER, LLC** | Third Respondent |

*In the application for security for a counter-claim for the wrongful arrest of the Second Applicant pursuant to an order of this Court granted on 30 August 2018, in terms of Section 5(3) of the Admiralty Jurisdiction Regulation Act, 105 of 1983.*

**APPLICANTS' SUPPLEMENTARY HEADS OF ARGUMENT**
**(COUNTER-SECURITY APPLICATION)**

1.

On 5 April 2019, this Honourable Court ruled that the First Applicant had established its entitlement to counter-security from the Respondents in regard to its alleged claim against the Respondents based on wrongful arrest under section 5(4) of the Admiralty Jurisdiction Regulation Act, 105 of 1983 ("the Admiralty Act").

2.

The Respondents seem intent upon further addressing the issue of whether the First Applicant has established an entitlement to counter-security. Little purpose is served on further debating this issue as it has already been decided by this Honourable Court.

3.

The *only* issue to be determined by this Honourable Court on 25 April 2019 is the form, extent and quantum of the counter-security to be furnished by or on behalf of the Respondents to the First Applicant.

4.

Notwithstanding the fact that the Respondents were first made aware on 5 September 2018 that the First Applicant asserted that the arrest of the *Advantage Sky* was wrongful and that it intended to obtain security from the Respondents in respect of its alleged counter-claim, the Respondents, on their version, did not take such demand seriously, nor did they engage meaningfully with the First Applicant at any point in the proceedings with a view to furnishing proper counter-security.

5.

It was only when the Supplementary Answering Affidavit of Mr Norton was filed on behalf of the Respondents on 14 April 2019 that a tender of counter-security was made by the Respondents to the First Applicant.  The security tendered took the form of a Letter of Undertaking to be furnished by a statutory Trust registered in Delaware, United States of America, ICON Equipment & Corporate Infrastructure Fund Fourteen Liquidating Trust ("the Trust").

6.

The security tendered by the Respondents:

6.1 is not in the usual form of security, having regard to the authorities on point and the prevailing practice in shipping matters in South Africa; and

6.2 has been rejected by the First Applicant on reasonable and justifiable grounds.

7.

In the premises, it is necessary for this Honourable Court to determine whether the security proffered by the Respondents is adequate security, with reference to form and quantum. Such determination is to be made by the exercise of a discretion in terms of section 5(2)(c) of the Admiralty Act.

**Acceptable Forms of Security**

8.

The Letter of Undertaking is not:

8.1 a payment into court under the control of the Registrar of the High Court; or

8.2 a bank guarantee from a first class South African or international bank;

8.3 a Letter of Undertaking furnished on behalf of a Protection and Indemnity Club that is part of the International Group of P&I Clubs; or

8.4 a Letter of Undertaking furnished on behalf of a reputable South African or international insurer.

9.

The First Applicant's refusal to accept the Letter of Undertaking as security for its counter-claim is therefore entirely reasonable and justifiable. This position is amplified having regard to the following:

9.1 the nature of the entity which is providing the Letter of Undertaking, namely the Trust, the purpose of which is to liquidate assets of the Trust and to make distributions to the beneficiaries of the Trust;

9.2 the present apparent financial position of the Trust, in respect of which the cash assets only comprise USD4,749,981.00,

(a) with the remaining assets not apparently being capable of swift liquidation, in particular the "notes receivable" of USD5,224,702.00 which only become payable in 2020 and 2021; and

(b) furthermore, no proper disclosure of the anticipated liabilities of the Trust for the current financial year ending 31 December 2019;

9.3 the difficulties presented by the enforcement of the obligations imposed by the Letter of Undertaking;

9.4 the terms of the Letter of Undertaking, specifically that the Trust's liability in terms thereof would be limited "*to the extent of its assets*"; and

9.5 the fact that the *"ICON Group"* has now reneged on its initial commitment to satisfy any judgment granted in favour of the First Applicant against the Respondents in the claim in reconvention.

10.

This must all be seen against the background that the Respondents, on their

own version, are special purpose vehicles which no longer own any vessels or any other assets (i.e. husks).

11.

No tender has been made by the Respondents in respect of any alternative form of security.

**Quantum**

12.

The First Applicant is entitled to security for its reasonably arguable best case. It is submitted that the quantification thereof must be approached by accepting at face value the allegations made by the First Applicant, subject to such not being so far-fetched and untenable that they should be rejected.

13.

The damages suffered and to be suffered by the First Applicant flow naturally from the arrest and continued detention of the *Advantage Sky*. It cannot be suggested that the calculation of such damages is either far-fetched or untenable.

14.

The Respondents have been aware of the nature of the damages claim and the basis upon which it has been calculated from at least 5 September 2018, and thereafter from 18 September 2018, when this counter-security application was launched.

15.

The First Applicant's reasonably arguable best case against the Respondents, jointly and severally, in respect of its counter-claim, is as follows:

15.1   the sum of USD10,314,636.45, being the capital claim and a revised provision for interest (taking into account the Respondents' contentions in regard to the interest calculation), calculated on the assumption that the trial will be determined in September 2019; and

15.2   R1,250,000.00 being security for costs in respect of the trial at which the First Applicant's Claim in Reconvention will be determined.

16.

The Respondents do not seriously dispute the quantification of the First Applicant's capital claim. In regard to the updated provision for interest, this calculation was recently updated with interest reckoned on each portion of the First Applicant's claim on a monthly basis[1].

17.

Whilst it is correct that this Honourable Court has a discretion to determine the applicable interest rate in terms of section 5(2)(f) of the Admiralty Act, the First Applicant is entitled to security for its reasonably arguable best case and the *Sea Joy*[2] is authority for the proposition that the applicable legal rate in South Africa may be applied to claims in foreign currency. In determining the Applicant's reasonably arguable best case, the maximum interest rate to which the First Applicant is entitled should be used in such determination.

---

[1] Annexure "**AC16**" page 379, Volume 4, Part C.

[2] *Owners of the Cargo Lately Laden on Board the MV Sea Joy v The MV Sea Joy* 1998 (1) SA 487 (C).

18.

The Respondents conflate two discrete claims for security for legal costs – the first, being security for costs in respect of the Set Aside Application on the grounds that the Respondents are *peregrini* of the Republic (which security has been provided); and the second, being security for costs in regard to the enforcement of the First Applicant's wrongful arrest claim, which includes both the Counter-Security Application and the claim in reconvention.

19.

On the basis of its reasonably arguable best case, the First Applicant is clearly entitled to security for costs in respect of both sets of proceedings.

20.

The Respondents seek to lay the blame for the delays in the hearing of the Set Aside Application at the door of the Applicants and, moreover, assert that this is part of a deliberate strategy on the part of the Applicants.

21.

These assertions are highly speculative and irrational as it is (and was) patently not in the First Applicant's interests to have the set aside hearing delayed, given the losses suffered by the First Applicant and accruing on a daily basis.

22.

As regards the alleged delays, the Respondents' assessment is not an accurate reflection of the attempts by the Applicants to have the matter heard expeditiously. To the extent that any delays were caused by the position adopted by the Applicants in respect of the Respondents' Rule 35(12) Notices, the Applicants were justified in their initial objections to producing the documents sought in the Notices. In the main, the delays in setting down the

applications were beyond the reasonable control of the Applicants.

**Balancing of interests**

23.

The *Advantage Sky* has been under arrest since 31 August 2018. For as long as she remains under arrest, the Respondents have security for their alleged claims (which it must be remembered are to be pursued in courts in England and the United States of America), at least to the value of the *Advantage Sky.*

24.

However, the First Applicants holds no security for its claim in reconvention. It is manifestly unfair for one set of parties to hold security in circumstances where the other party holds no security.

25.

This is the more so, where the set of parties who commenced the litigation, namely the Respondents, hold security whilst the party who has had to respond to the arrest of its vessel, namely the First Applicant, holds no security. At the very heart of the damages suffered by the First Applicant is the litigation arising out of the wrongful arrest of the *Advantage Sky.*

26.

It should be remembered that by way of a letter dated 28 July 2010, ICON described itself thus:

> "*While its funds have a diversified investment strategy,* **ICON has a particular specialty in maritime and offshore assets**. *To date, the Funds have participated in over USD 1.1 billion worth of transactions in the marine and offshore space with industry leaders such as Wilh.*

*Wilhelmsen, American Eagle Tankers and Teekay Corporation.*" (emphasis added)[3]

27.

In the premises, irrespective of the advice which the Respondents may have received in regard to the arrest of the *Advantage Sky*, prior to commencing with the Arrest Application, the Respondents, being part of a Group with a professed "*speciality in maritime … assets*" must reasonably have been aware of the following:

27.1    that an arrest of the *Advantage Sky* would probably give rise to the First Applicant suffering damages as a result of the arrest;

27.2    more particularly, that the *Advantage Sky* was on charter to Shell Western at the time of its arrest and that it would be off-hire as a result of the arrest; and

27.3    that, having regard to the significant quantum of the alleged claims asserted in the foreign proceedings, it would probably be difficult for the First Applicant to furnish security in respect of such claims, with the result that an extended detention of the *Advantage Sky* would probably materialise.

28.

Notwithstanding that it must have had an appreciation of these risks associated with the arrest of the *Advantage Sky,* the Respondents nevertheless proceeded with the arrest and must be regarded as having reconciled themselves with the consequences associated with such arrest, including the risk of a claim for wrongful arrest.

---

[3] Page 136, Volume 2, Part B.

29.

In the premises, now that the risks associated with the arrest have eventuated, it does not lie in the mouths of the Respondents to complain.

30.

The Respondents contend that, should this Honourable Court set aside the arrest of the *Advantage Sky* on the basis of a failure to furnish adequate counter-security, they will be deprived of their section 34 constitutional rights. This contention is without merit, as it misses the point that the Respondents' underlying claims will not be determined in this Honourable Court – they are to be determined in the courts in England and the United States of America.

31.

Therefore, the Respondents' right to have its dispute resolved in court would be unaffected by a decision of this Honourable Court setting aside the arrest on the basis of a failure to furnish adequate counter-security. The issues before this Honourable Court are simply related to the question of whether the arrest of the *Advantage Sky*, **as security for the claims which are being determined in the foreign proceedings**, is good in law.

32.

In any event, section 34 of the Constitution merely provides, in summary, that everyone has a right to have any dispute decided in a fair public hearing before a court. If the arrest were to be set aside, that would follow only after a determination by this Honourable Court of the parties' respective rights and obligations and would be the culmination of the determination of relevant issues by the Court. The dispute would thus have been resolved by the application of law decided in a fair public hearing.

33.

In regard the appropriate sanction, should this Honourable Court find that the Respondents are unable to provide adequate counter-security to the First Applicant, the following is submitted:

33.1 the financial circumstances of the Respondents is a factor to be considered when determining whether the First Applicant has established an entitlement to counter-security;

33.2 the ability of the Respondents to comply with an order directing them to furnish adequate counter-security to the First Applicant, whether for financial reasons or otherwise, is not a factor that should be taken into account by this Honourable Court in determining the appropriateness of the sanction following non-compliance;

33.3 for an order directing the Respondents to furnish appropriate counter-security to be effective, it is crucial that there be a sanction in the event of non-compliance by the Respondents, failing which such order is effectively rendered nugatory;

33.4 apart from directing that the *Advantage Sky* be released from arrest upon non-compliance with such an order, there is no other appropriate sanction to incentivise compliance by the Respondents and give the order the necessary degree of effectiveness; and

33.5 when the Respondents arrested the *Advantage Sky* within this Honourable Court's admiralty jurisdiction, they submitted themselves to this Honourable Court exercising all relevant powers that it has at its disposal under the Admiralty Act which included the power to discharge the arrest based upon the lack of provision of adequate counter-security.

Case 1:19-cv-05065-JMF   Document 13-10   Filed 06/11/19   Page 12 of 12

Page 12

                                          **MICHAEL FITZGERALD SC**

Chambers, Cape Town and Durban

24 April 2019

1584955