```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
ADVANTAGE SKY SHIPPING LLC and M/T                      :
"ADVANTAGE SKY",                                        :
                                                        :
                               Plaintiffs,              :
                                                        :
               -v-                                      :     19-CV-5065 (JMF)
                                                        :
ICON EQUIPMENT AND CORPORATE                            :     MEMORANDUM OPINION
INFRASTRUCTURE FUND FOURTEEN                            :         AND ORDER
LIQUIDATING TRUST,                                      :
                                                        :
                               Defendant.               :
                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  This case arises out of a maritime dispute, currently being litigated in South Africa, between Plaintiffs and certain subsidiaries of ICON Equipment and Corporate Infrastructure Fund Fourteen Liquidating Trust (the "Trust"), which is the sole Defendant here. Plaintiffs are an oil tanker (the "Advantage Sky") and its corporate owner ("Advantage Sky Shipping"). In August 2018, the Trust's subsidiaries caused the Advantage Sky to be arrested in South African waters. Docket No. 1 ("Compl."), ¶ 4. Plaintiffs counterclaimed against the subsidiaries for wrongful arrest, demanding over $10 million, and also sought security from the subsidiaries with respect to that claim. *Id.* ¶¶ 6, 8. A South African court granted Plaintiffs' preliminary request for security. *Id.* ¶ 9; *see* Docket No. 13 ("Beiersdorf Decl."), Ex. I. But rather than require the subsidiaries to post security they could not afford, the South African Court allowed them to rely on a Letter of Undertaking issued by the Trust, in which the Trust guaranteed the subsidiaries' potential liability in the event of an eventual settlement agreement or court judgment. *See* Beiersdorf Decl. Ex. L; Compl. ¶¶ 9-11, 17; *id.* Ex. 3 ("Letter of Undertaking").

Plaintiffs brought this action against the Trust only weeks later. Proceeding *ex parte* in the first instance, Plaintiffs sought, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, a maritime attachment directed at funds allegedly held by the Trust in this District. *See* Compl. ¶ 39; Fed. R. Civ. P. Supp. AMC Rule B. Following an *ex parte* hearing on the record, the Court granted Plaintiffs' application on May 30, 2019. *See* Docket No. 3. On June 11, 2019, the Trust filed a motion to vacate the maritime attachment pursuant to Supplemental Rule E(4)(f) and to dismiss the Complaint. *See* Docket No. 11; Docket No. 14 ("Trust Mem."). In its motion, the Trust argues that the Court should abstain from exercising jurisdiction in light of the South African proceedings, Trust Mem. 12-15; that the Court lacks maritime jurisdiction because the Letter of Undertaking from which Plaintiffs' claim arises is not itself a maritime contract, *id.* at 15-18; that Plaintiffs' claim is unripe because the Trust's obligation under the Letter of Undertaking has not yet arisen (and may never arise), *id.* at 18-20; and that Plaintiffs fail to establish that the Trust cannot be "found" in the District, as Supplemental Rule B requires, *id.* at 20-23. In addition, the Trust seeks sanctions in the form of attorney's fees and costs for what they describe as Plaintiffs' and Plaintiffs' counsel's bad-faith litigation conduct. *Id.* at 23-24. In light of Supplemental Rule E(4)(f)'s mandate that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing," the Court scheduled a hearing on the Trust's motion for two days later and invited Plaintiffs to file a response, *see* Docket No. 15; *see also* Docket No. 20 ("Pls.' Reply").[1]

---

[1] In their response to the Trust's motion, Plaintiffs request leave to submit additional briefing. *See* Pls.' Reply 10. The Court denies that request for several reasons, most of all because — in light of the Court's conclusions as to its own jurisdiction — additional briefing on any other issues would be futile. In service of Supplemental Rule E's and the Local Civil Rules' policy of prompt disposition of motions for relief from maritime attachments, the Court has acted quickly in this case. Even so, the Court gave Plaintiffs an opportunity to respond to the motion and Plaintiffs did respond; then, at the hearing, the Court heard oral argument from Plaintiffs on the issues discussed

2

The Court agrees with at least two of Defendant's arguments and, thus, need not reach the others. First, Plaintiffs' claim does not trigger the Court's admiralty or maritime jurisdiction. *See* 28 U.S.C. § 1333(1). Although the South African litigation between Plaintiffs and the Trust's subsidiaries may well involve maritime claims, *those* claims are not at issue here; instead, Plaintiffs seek to secure the Trust's performance of the Letter of Undertaking in which the Trust agreed to guarantee its subsidiaries' potential liability in the South African litigation. Neither "an agreement to pay damages for another's breach of a maritime charter" nor an "agreement . . . to contribute to a settlement agreement arising out of a breach of" a maritime contract, however, is *itself* a maritime contract. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) (first quotation); *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991) (second quotation). But those types of agreements are indistinguishable from the Letter of Undertaking here. The Letter of Undertaking is an agreement by the Trust — a non-party to the South African litigation — to pay any unsatisfied liabilities that its subsidiaries may incur if the subsidiaries lose or settle that case. *See* Letter of Undertaking 1 (agreeing that the Trust "will make payment" to Advantage Sky Shipping "which may be agreed in terms of a written settlement agreement between any one or all of the [subsidiaries]" or "for which any one or all of the [subsidiaries] are found to be liable to [Advantage Sky Shipping] by a final unappealable judgment of the [South African] Court"). As in *Fednav*, "[t]he direct subject-matter of the suit is the covenant to pay such damages," and because that covenant *itself* "neither involves maritime service nor maritime transactions[,] . . . the mere fact that the event and measure of liability are referable" to a maritime contract "does not make the

---

herein. Moreover, Plaintiffs had the opportunity to brief these issues when they first sought the attachment on an *ex parte* basis, at which point it was Plaintiffs' burden (as it still is) to demonstrate that they were entitled to the relief sought. All told, Plaintiffs have had ample opportunity to be heard. It would be inequitable to delay granting the Trust relief so as to hear from Plaintiffs again.

agreement to pay a maritime contract, nor make its obligation maritime in the jurisdictional sense." 925 F.2d at 601 (alteration and internal quotation marks omitted).

Relying primarily on *Great Eastern Shipping Co. v. Binani Cement Ltd.*, 655 F. Supp. 2d 395 (S.D.N.Y. 2009), Plaintiffs assert that "[c]ourts in this district have held that a guarantee issued in order to prevent a maritime lien subjects the guarantor to the court's admiralty jurisdiction and Rule B attachment." Pls.' Reply 6. But *Great Eastern* is easily distinguished. In *Great Eastern*, the plaintiff had agreed to release certain cargo to the defendant even though the defendant had not yet received the bills of lading for the goods; in exchange for that agreement, the defendant agreed to indemnify the plaintiff against any damages that might result from delivering the goods in accordance with the defendant's request. *See* 655 F. Supp. 2d at 396-97. The district court acknowledged that, under *Fednav*, an agreement to pay damages arising from another's breach of a maritime obligation does not, *for that reason*, become a maritime obligation, *id.* at 398, but held that the parties' indemnification agreement was nevertheless a maritime contract because it involved the exchange of a maritime right, *see id.* at 399 ("Great Eastern's consideration was the prompt discharge of the cargo, a quintessentially maritime service, in forbearance of its right to demand the bills of lading on discharge, a quintessentially maritime right. Therefore, the [Letter of Indemnification] was maritime in nature." (citation omitted)).[2] Here, by contrast, no maritime right, obligation, good, or service has changed hands in connection with the Letter of Undertaking itself. Whatever the nature of Plaintiffs' South African claims against the subsidiaries, the Trust's Letter of Undertaking is a mere promise to pay whatever damages or settlement obligations the

---

[2] *Deval Denizcilik Ve Ticaret A.S. v. Agenzia Tripcovich S.R.L.*, 513 F. Supp. 2d 6 (S.D.N.Y. 2007), upon which Plaintiffs also rely, *see* Pls.' Reply 4, is distinguishable for the same reasons. *See* 513 F. Supp. 2d at 9 (distinguishing *Fednav* on the ground that the guarantor had "not merely promise[d] to pay money should" the guaranteed party "be held liable," but rather had "promised to pay money *in order to prevent* [*the plaintiff*] *from exercising a maritime lien* upon cargo . . . . In other words, the guarantee was issued as a substitute for the cargo.").

4

subsidiaries may incur in the course of the South African litigation. Unlike a dispute arising from an agreement that involves the exchange of a maritime right or obligation, any dispute over the Letter of Undertaking would not involve a maritime issue. Put differently, the Trust's obligations under the Letter of Undertaking do not depend on any party's rights, duties, breaches, or obligations under maritime law. As "the new and separate promise of the surety," the Letter of Undertaking is therefore not itself an obligation that is "maritime in the jurisdictional sense." *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440, 443 (7th Cir. 1907).

Second, and in any event, the Court agrees with the Trust that Plaintiffs' application fails on the merits because the Trust is "found" in this District. Under Second Circuit precedent, "Rule B . . . permit[s] a plaintiff to obtain an order of attachment if it can show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 493 (2d Cir. 2013) (internal quotation marks omitted). And "[a]lthough Rule B does not expressly define 'found within the district,'" the Second Circuit "has interpreted it to require a two-pronged inquiry: first, whether [the defendant] can be found within the district in terms of jurisdiction, and second, if so, whether [it] can be found for service of process." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009) (internal quotation marks omitted). Here, there is no dispute that the Trust is subject to service in the Southern District of New York; indeed, Plaintiffs actually served the Trust here. *See* Docket No. 22. Nor is there any reasonable dispute that the Trust is subject to personal jurisdiction in this District pursuant to N.Y. C.P.L.R. § 302, as the Trust conducts all of its operations through its Managing Trustee in New York, New

5

York.  *See* Docket No. 12 ("Pinero Decl."), ¶¶ 6-9.[3]  In arguing otherwise, Plaintiffs take out of context a single provision of the Trust Agreement, which states, in relevant part, that "[t]he Trust shall not continue or engage in the conduct of any trade or business."  Compl. Ex. 2, § 2.2.  But in light of the rest of the Trust Agreement, which authorizes the Managing Trustee to conduct all sorts of business on the Trust's behalf, *see* Pinero Decl. ¶ 7 (citing Section 5.9(a) of the Trust Agreement), not to mention the actual conduct of the Trust, *see id.* ¶ 9, that paragraph alone does not establish that the Trust is not found in this District.  *See DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Capital Americas Inc.*, 882 F.3d 44, 48 (2d Cir. 2018) (noting that it is the plaintiff's burden to establish the right to attachment).

In sum, the Court finds that it lacks jurisdiction to issue the maritime attachment, which would fail on its merits in any event.  Furthermore, because the maritime attachment is the only substantive relief demanded in Plaintiffs' Complaint, *see* Compl. ¶ 39, and the Court lacks jurisdiction to award it, the Court concludes that it lacks jurisdiction over the action as a whole.  (Indeed, at oral argument, Plaintiffs all but conceded that if the Court concluded that the Letter of Undertaking was not a maritime contract, that it would have to dismiss the action.)

That leaves only the matter of sanctions.  The Trust seeks sanctions against Plaintiffs in the form of an award of attorney's fees and costs "because Plaintiffs knew that they could not satisfy the elements required for a Rule B attachment, and sought such an attachment anyway."  Trust Mem. 23-24.  That request is not without force, if only because, in their *ex parte* filings, Plaintiffs failed to cite Second Circuit precedent that was plainly relevant to the Court's jurisdiction over this action.  *See* Docket No. 4.  An attorney's duty of candor to the Court "is at its apex when the court

---

[3]  Additionally, in a filing with the Securities and Exchange Commission, which the Trust provided to the Court at oral argument and of which the Court can take judicial notice, *see, e.g.*, *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015), the Trust represented that its "principal executive offices" are at 3 Park Avenue in New York, New York.

must rely on the verified submissions of counsel before issuing an order ex parte." *ST Shipping & Transp., Inc. v. Golden Fleece Mar. Inc.*, No. 7-CV-11147 (SAS), 2008 WL 4178189, at *7 (S.D.N.Y. Sept. 9, 2008). Indeed, "[t]he conformance of the extraordinary maritime attachment remedy with the strictures of due process is premised on the assurance that plaintiffs and their counsel will act with care and candor." *Id.* (internal quotation marks omitted). Plaintiffs' counsel did not act with the "care and candor" that the Court would expect. "That being said, accusations of unethical conduct and efforts to deceive this Court should not be lightly made." *Id.* And there is a difference between meritless arguments and sanctionable arguments. So, although the Court is far from impressed with Plaintiffs' counsel's conduct, the Court declines to impose sanctions.

For the foregoing reasons, Defendant's motion to vacate the maritime attachment and garnishment and to dismiss the Complaint is GRANTED; the maritime attachment and garnishment is VACATED; and the Complaint is DISMISSED without prejudice for lack of subject-matter jurisdiction. Additionally, the Trust's request for sanctions is DENIED.

The Clerk of Court is directed to terminate Docket No. 11 and to close the case.

SO ORDERED.

Dated: June 14, 2019
New York, New York

                                JESSE M. FURMAN
                              United States District Judge